JAM:JPM/ANR
F.#2015R00270

Filed: September 08, 2022

CR-22-405
Judge Dearie
Mag. Judge Cho

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ANTHONY VILLANI,
JAMES COUMOUTSOS,
   also known as "Quick,"
DENNIS FILIZZOLA,
MICHAEL PRAINO,
   also known as "Platinum,"
LOUIS TUCCI, JR.,
   also known as "Tooch," and
█████████████,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. CR-22-405
(T. 18, U.S.C., §§ 371, 981(a)(1)(C),
982(a)(1), 982(b)(1), 1955(a), 1955(d),
1956(a)(1)(A)(i), 1956(a)(1)(B),
1956(h), 1962(c), 1963, 1963(a),
1963(m), 2 and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

The Enterprise

1.     The Luchese organized crime family of La Cosa Nostra (the "Luchese crime family" or the "Enterprise"), including its leaders, members and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise. The Luchese crime family engaged in, and its activities affected,

interstate and foreign commerce. The Luchese crime family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2. La Cosa Nostra operated through organized crime families. Five of these crime families – the Bonanno, Colombo, Gambino, Genovese and Luchese crime families – were headquartered in New York City and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries. Another crime family, the Decavalcante crime family, operated principally in New Jersey, but from time to time also in New York City.

3. The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4. The Luchese crime family had a hierarchy and structure. The head of the Luchese crime family was known as the "boss." The Luchese crime family boss was assisted by an "underboss" and a counselor known as a "consigliere." Together, the boss, underboss and consigliere were the crime family's "administration." With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups. The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the Luchese crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's

3

incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. Further, on occasion, the Luchese crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5. Below the administration of the Luchese crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

6. Only members of the Luchese crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7. Many requirements existed before an associate could become a member of the Luchese crime family. The Commission of La Cosa Nostra from time to time limited the number of new members who could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or

disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things, swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

### Methods and Means of the Enterprise

8. The principal purpose of the Luchese crime family was to generate money for its members and associates. This purpose was implemented by members and associates of the Luchese crime family through various criminal activities, including extortion, bribery, fraud, illegal gambling and loansharking. The members and associates of the Luchese crime family also furthered the Enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Luchese crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes without the approval of higher-ranking members of the family. For those purposes, members and associates of the Enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10. The members and associates of the Luchese crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to

murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the Enterprise.

11. Members and associates of the Luchese crime family often coordinated criminal activity with members and associates of other organized crime families.

### The Racketeering Defendant

12. The defendant ANTHONY VILLANI was a soldier in the Luchese crime family.

### COUNT ONE
(Racketeering)

13. The allegations contained in paragraphs one through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. In or about and between 2004 and 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY VILLANI, together with others, being a person employed by and associated with the Luchese crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.

### RACKETEERING ACT ONE
(Illegal Gambling – Sports Betting)

15. In or about and between 2004 and 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY VILLANI, together with others, did knowingly and intentionally conduct,

finance, manage, supervise, direct and own part of an illegal gambling business, to wit: a gambling business involving sports betting, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned part of such business and which remained in substantially continuous operation for one or more periods in excess of 30 days and had a gross revenue of at least $2,000 in one or more single days, in violation of Title 18, United States Code, Sections 1955(a) and 2.

RACKETEERING ACT TWO
(Money Laundering)

16.　　The defendant ANTHONY VILLANI committed the following acts, either one of which alone constitutes Racketeering Act Two.

A.　　<u>Money Laundering Conspiracy</u>

17.　　In or about and between December 2013 and December 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY VILLANI, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to wit: the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955(a), knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of

specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i), in violation of Title 18, United States Code, Section 1956(h).

 B. Money Laundering

  18. In or about and between December 2013 and December 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY VILLANI, together with others, did knowingly and intentionally conduct and attempt to conduct one or more financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to wit: the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955(a), knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2; and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

RACKETEERING ACT THREE
(Attempted Extortion – John Doe)

  19. In or about and between April 2020 and December 2020, both dates being approximate and inclusive, within the Southern District of New York, the defendant ANTHONY VILLANI, together with others, did knowingly and intentionally attempt to steal property by extortion, in that the defendant attempted to obtain property, to wit: money, by compelling and inducing John Doe, an individual whose identity is known to the Grand Jury,

8

to deliver such property by instilling in him a fear that, if the property were not so delivered, the defendant and others would cause physical injury to some person in the future, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i) and 110.00.

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

### COUNT TWO
(Conspiracy to Commit Illegal Gambling)

20. In or about and between 2004 and 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY VILLANI, JAMES COUMOUTSOS, also known as "Quick," DENNIS FILIZZOLA, MICHAEL PRAINO, also known as "Platinum," LOUIS TUCCI, JR., also known as "Tooch," and ███████ ███████████, together with others, did knowingly and willfully conspire to conduct, finance, manage, supervise, direct and own part of an illegal gambling business, to wit: a gambling business involving sports betting, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned part of such business and which remained in substantially continuous operation for one or more periods in excess of 30 days and had a gross revenue of at least $2,000 in one or more single days, contrary to Title 18, United States Code, Section 1955(a).

21. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants did commit and cause the commission of, among others, the following:

## OVERT ACTS

███████████████████████████████████████

███████████████████████ for a gambling business named "Rhino Sports" (the "Gambling Business").

(b)     On or about January 4, 2020, FILIZZOLA and PRAINO met in Pelham, New York to discuss PRAINO paying a debt owed to the Gambling Business.

(c)     On or about January 7, 2020, VILLANI and PRAINO met near a pizzeria in the Bronx, New York, the identity of which is known to the Grand Jury (the "Pizzeria"), to discuss the operation of the Gambling Business.

(d)     On or about January 27, 2020, TUCCI met with a bookmaker employed by the Gambling Business in Queens, New York.

(e)     On or about February 6, 2020, PRAINO gave FILIZZOLA approximately $5,000 in cash owed to the Gambling Business.

(f)     ████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████

(g)     On or about April 22, 2020, VILLANI and COUMOUTSOS met at the Pizzeria to discuss the operation of the Gambling Business.

(h)     On or about April 26, 2020, VILLANI and ███████ discussed the operation of the Gambling Business during a telephone call.

(i)     On or about April 27, 2020, VILLANI met with TUCCI in Bronxville, New York to discuss the operation of the Gambling Business.

(j)  On or about May 15, 2020, PRAINO made a payment of $2,280 as a portion of the procceds owed to the Gambling Business.

(k)  On or about July 1, 2020, VILLANI gave TUCCI a note to provide to another participant in the Gambling Business, which read, "Check Q's figures, Get money from Hawk. I want to run into you."

(l)  On or about July 24, 2020, VILLANI instructed a participant in the Gambling Business to check the website for the Gambling Business to ensure a bookmaker was "getting straight half's."

(m)  On or about August 25, 2020, VILLANI and FILIZZOLA met to discuss the operation of the Gambling Business.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT THREE
(Illegal Gambling Business – Sports Betting)

22.  In or about and between 2004 and 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY VILLANI, JAMES COUMOUTSOS, also known as "Quick," DENNIS FILIZZOLA, MICHAEL PRAINO, also known as "Platinum," LOUIS TUCCI, JR., also known as "Tooch," and ███████████████████ together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own part of an illegal gambling business, to wit: a gambling business involving sports betting, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, and which involved five or more persons who conducted, financed, managed, supervised, directed and owned part of such business and which remained in

substantially continuous operation for one or more periods in excess of 30 days and had a gross revenue of at least $2,000 in one or more single days.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT FOUR
(Money Laundering Conspiracy)

23. In or about and between December 2013 and December 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY VILLANI and DENNIS FILIZZOLA, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to wit: the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955(a), knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT FIVE
(Money Laundering)

24. In or about and between December 2013 and December 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY VILLANI and DENNIS FILIZZOLA, together with

others, did knowingly and intentionally conduct and attempt to conduct one or more financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to wit: the operation of an illegal gambling business, in violation of Title 18, United States Code, Section 1955(a), knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of specified unlawful activity, and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity.

(Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

25.  The United States hereby gives notice to the defendant charged in Count One that, upon his conviction of that offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963(a), which requires any person convicted of such offense to forfeit: (a) any interest the person acquired or maintained in violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claim against or property or contractual right of any kind affording a source of influence over, any enterprise which the person has established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962, including but not limited to: (a) approximately $36,658.00 in U.S. currency, 5,655

Case 1:22-cr-00405-KAM  Document 32  Filed 09/20/22  Page 13 of 17 PageID #: 146

13

Euros, and 40 British Pounds Sterling, seized on or about December 14, 2020 from 122 Town Green Drive, Elmsford, New York, and all proceeds traceable thereto; (b) approximately 33 pieces of jewelry, seized on or about December 14, 2020 from 122 Town Green Drive, Elmsford, New York, and all proceeds traceable thereto; (c) approximately $18,731.00 in U.S. currency, seized on or about December 15, 2020 at or near 122 Town Green Drive, Elmsford, New York, and all proceeds traceable thereto; (d) approximately $407,380.00 in U.S. currency, seized on or about December 15, 2020 from 1510 Library Avenue, Bronx, New York, and all proceeds traceable thereto; (e) approximately $55,542.00 in U.S. currency, seized on or about December 15, 2020 from 2 Consulate Drive, Tuckahoe, New York, and all proceeds traceable thereto; (f) approximately $21,412.00 in U.S. currency, seized on or about December 15, 2020 from 8 Pinehurst Court, Courtland Manor, New York, and all proceeds traceable thereto; (g) approximately $177,344.12, seized on or about December 17, 2020 from JPMorgan Chase Bank Account Number 30362939, held in the name of Pleasantville Playa, LLC, and all proceeds traceable thereto; (h) approximately $163,215.45, seized on or about December 17, 2020 from JPMorgan Chase Bank Account Number 63592237, held in the name of Bronxville Playa Corp., and all proceeds traceable thereto; and (i) approximately $293,488.36, seized on or about December 17, 2020 from JP Morgan Chase Bank Account Number 770003718465, held in the name of defendant Anthony Villani, and all proceeds traceable thereto (together, the "Seized Property").

      26.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

          (a)     cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

  (d) has been substantially diminished in value; or

  (e) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS TWO AND THREE

  27. The United States hereby gives notice to the defendants charged in Counts Two and Three that, upon their conviction of either such offense, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 1955(d), which provides for the forfeiture of any property, including money, used in violation of Title 18, United States Code, Section 1955, including but not limited to the Seized Property.

  28. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

  (d)  has been substantially diminished in value; or

  (e)  has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS FOUR AND FIVE

  29.  The United States hereby gives notice to the defendants charged in Counts Four and Five that, upon their conviction of either such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property, including but not limited to the Seized Property.

  30.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

  (a)  cannot be located upon the exercise of due diligence;

  (b)  has been transferred or sold to, or deposited with, a third party;

  (c)  has been placed beyond the jurisdiction of the court;

  (d)  has been substantially diminished in value; or

  (e)  has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United

16

States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

*Thomas J. Paradis*
FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

By: *Carolyn Pokorny*
Assistant U.S. Attorney

F.#: 2015R00270
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

ANTHONY VILLANI, JAMES COUMOUTSOS, also known as "Quick,"
DENNIS FILIZZOLA, MICHAEL PRAINO, also known as "Platinum,"
LOUIS TUCCI, JR., also known as "Tooch," and ▬▬▬▬▬▬▬▬▬▬▬

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1955(a), 1955(d), 1956(a)(1)(B), 1956(h), 1962(c), 1963, 1963(a), 1963(m), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____ *Thomas J. Paradis*
*Foreperson*

Filed in open court this _____ day,

of _____ A.D. 20 _____

*Clerk*

Bail, $ _____

*James P. McDonald, Assistant U.S. Attorney (718) 254-6376*
*Antoinette N. Rangel, Assistant U.S. Attorney (718) 254-7481*